(November 2, 1918.)

OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant, v. MINIDOKA COUNTY, a Legal Subdivision of the State of Idaho, INDEPENDENT SCHOOL DISTRICT No. 1 of MINIDOKA COUNTY, and C. L. TOYER, Treasurer and Ex-Officio Tax Collector Thereof, Respondents.

[175 Pac. 962.]

SCHOOL DISTRICTS—SPECIAL LEVY FOR MAINTAINING GYMNASIUM—SPECIFIC STATUTORY AUTHORITY NECESSARY.

1.   The power and authority to levy and collect taxes is wholly statutory, and where the purpose for which and the circumstances under which a special tax may be levied are expressly defined and limited by statute, the prerequisite circumstances must exist in order to give legal effect to a pretended tax levy for such purpose.

2.   Chap. 14, Sess. Laws 1913, p. 53, prior to its amendment by chap. 59, Sess. Laws 1917, p. 178, which authorized boards of trustees of independent school districts to purchase or otherwise acquire sites for playgrounds and gymnasiums, to equip and maintain the same, and to issue and sell bonds for such purposes, did not authorize the levying of a special school tax for the maintenance and care of a gymnasium and grounds, where no bonds were ever issued by the district for the purpose which said statute sought to provide for, and where such special school tax was in excess of and in addition to the maximum school taxes authorized by chap. 159, Sess. Laws 1913, p. 527, prior to its amendment by chap. 59, Sess. Laws 1917, p. 178.

[As to the purposes for which the power of taxation may be exercised, see notes in 2 Am. St. 94; 8 Am. St. 506; 16 Am. St. 365.]

APPEAL from the District Court of the Fourth Judicial District, for Minidoka County.   Hon. James R. Bothwell, Judge.

Action against Independent School District No. 1 to enjoin the collection of a portion of a tax.   Judgment *reversed.*

George H. Smith and H. B. Thompson, for Appellant.

"Taxes cannot be levied or collected at any other time nor in any other manner nor for any other purpose than that designated by law, and statutes authorizing the levy of special taxes should not be so construed as to extend their meaning beyond a clear import of the words used." (*Shoup v. Willis,* 2 Ida. 120, 6 Pac. 124; *Weiser Nat. Bank v. Jeffreys,* 14 Ida. 659, 95 Pac. 23.)

Sweeley & Sweeley, for Respondents.

The true intent and meaning must prevail over the literal sense of the terms and control the strict letter of the law when the letter would lead to possible injustice, contradiction and absurdity. (*Chandler v. Lee,* 1 Ida. 349.)

The whole purpose and intent of chapter 14 is to provide for the construction and maintenance of gymnasiums and playgrounds. The first proviso is "in the event of the issuance of bonds." The gymnasium was in fact built from the proceeds of bonds. Then follows the next provision, "as provided for in this section."

The word "as" has been judicially found to have a number of meanings. To accept it in the sense "in the specific way" or "by the exact means" would lead to a manifest injustice, would put a premium on form instead of substance, and would have the legislature say that the way in which the thing was to be done was of more importance than the thing itself. But the other and equally well-accepted meaning of the word, "for the purpose," resolves the matter in accord with the real purpose of the act. (*Alexander v. Tolleston Club of Chicago,* 110 Ill. 65; *Smith v. Phillips,* 131 Ala. 629, 30 So. 872; *Carr v. State,* 34 Ark. 448, 36 Am. Rep. 15; *Lemmons v. State,* 56 Ark. 559, 20 S. W. 404; 1 Words & Phrases, 518.)

BUDGE, C. J.—This is an action to enjoin the collection of a portion of the taxes levied by respondent, Independent School District No. 1 of Minidoka county, for the year 1915.

The cause was tried by the court. Findings of fact and conclusions of law were filed and a judgment entered dismissing the complaint and denying the injunction prayed for. This appeal is from the judgment.

It appears that the district, before becoming organized as an independent school district, issued bonds in the amount of $47,000, for the purpose of building a schoolhouse. With the proceeds of these bonds the schoolhouse was built and in connection therewith and as a part of the same building a gymnasium was partly equipped. Thereafter the district was organized into an independent school district and in 1915 the board of trustees thereof levied an assessment aggre·· gating eighteen mills. The trial court found "That it was the intention of the board of trustees of Independent School District to levy ten mills for the payment of interest on the bonds and a sinking fund for the payment of the bonds at maturity and to provide funds for the maintenance of the schools in the district for nine months in the year; also four mills to maintain rural routes which were then being maintained by the district, and four mills for the maintenance and care of said gymnasium and grounds." As a conclusion of law the court found "That the board of trustees of Independent School District No. 1 has the right to make and levy for maintenance and care of a gymnasium and grounds, which, added to the levy made for all purposes, does not exceed twenty mills." The specifications of error attack the latter finding.

Section 129 of the Code of Laws on Education, approved March 7, 1911, as amended by chap. 159, Sess. Laws 1913, page 527, prior to its amendment by chap. 59, Sess. Laws 1917, page 178, defined the powers of the board of trustees of independent school districts. Subdivision 3 thereof was as follows:

"3. To levy a special tax, if necessary, which when added to money apportioned by the county superintendent of schools will be sufficient to provide funds for the maintenance of the schools for nine (9) months in each year; the special

taxes levied by said board of trustees for the payment of interest on bonds and sinking fund, for payment of bonds at maturity, together with the levy for the maintenance of schools, shall not exceed ten (10) mills on the dollar of the assessed valuation of all property in the district; *Provided,* That districts maintaining rural school routes, may levy a tax in addition to the aforesaid ten (10) mills sufficient to maintain the said rural school routes, said tax for school routes not to exceed four (4) mills.''

By chap. 14, Sess. Laws 1913, p. 53, prior to its amendment by chap. 59, Sess. Laws 1917, p. 178, the boards of trustees of independent school districts were granted in addition to the powers then possessed by such boards the power:

''To purchase or otherwise acquire grounds or sites for playgrounds and gymnasiums and build and erect gymnasiums in their districts, either in connection with school buildings or as separate buildings; to equip and maintain all such playgrounds and gymnasiums with all necessary apparatus and fixtures; to issue and sell bonds in the manner as provided for by law to raise money for the purpose of buying such grounds, sites and building such gymnasiums and purchasing apparatus and fixtures therefor. *Provided,* That in the event of the issuance of bonds as provided for in this section the board of trustees may levy for the proper maintenance and care of the gymnasium and grounds a special tax which together with all other taxes levied by such board shall not in any one year exceed twenty mills on the dollar. . . . . ''

It will be noticed that the board could issue and sell bonds in the manner provided by law to raise money for the purpose of buying grounds, building gymnasiums and purchasing apparatus and fixtures therefor, and while they were authorized ''To equip and maintain all such playgrounds and gymnasiums,'' their authority to levy a special tax therefor depended upon ''the event of the issuance of bonds as provided for in this section.'' The section provided for the issuance of no bonds except for playgrounds and gymnasium purposes, and no authority was conferred upon the board to

levy a special tax where no such bonds had been issued. There is no finding that any bonds were ever issued, either before or after the organization of the district into an independent school district, to raise money for playgrounds or gymnasium purposes, and the evidence clearly negatives any issue for such purpose. The board, therefore, had no authority to levy a special tax in any amount for the maintenance and care of the gymnasium and grounds. The power and authority to levy and collect taxes is entirely statutory, and where the purpose for which, and the circumstances under which, a special tax may be levied are expressly defined and limited by statute, the prerequisite circumstances must exist in order to give a pretended levy for the purpose legal effect, and where these circumstances are shown not to exist, the levy is illegal and void.

In *Shoup v. Willis,* 2 Ida. 120, 6 Pac. 124, this court said: "It is a well-settled principle of law that taxes cannot be levied or collected at any other time, or in any manner, nor for any other purpose, than that designed by law. . . . . Statutes authorizing the levy of special taxes should not be so construed as to extend their meaning beyond the clear import of the language employed." '

Respondents' contention that the words "as provided for" in the proviso in chapter 14, *supra,* should be construed to mean "for the purpose provided for," even if correct does not obviate the difficulty, for as above noted, no bonds were ever issued for the purpose which chapter 14, prior to its amendment, sought to provide for. The only bonds ever issued by the district, so far as relates to this case, were the $47,000 in bonds, sold for the purpose of building a schoolhouse.

However urgent the necessity or cogent the reasons may be for the levy in question, the board of trustees was, under the facts presented, and under the law then in force, without authority to make the levy.

The trial court should have enjoined the collection of the four-mill levy for the maintenance and care of gymnasium and grounds. The judgment is reversed and the cause re-

manded, with instructions to enter a judgment in accordance with the views herein expressed. Costs are awarded to appellant.

Morgan and Rice, JJ., concur.