Argued September 23, reversed October 8, petition for
rehearing denied November 6, 1952

In re Petition of
EDWARD HINES LUMBER CO.
EDWARD HINES LUMBER CO. *v.*
LANE COUNTY, OREGON
248 P. 2d 720

*Bernard Shevach,* of Salem, argued the cause for
appellant. With him on the brief were C. E. Luckey,
of Eugene, Samuel Stewart, of Salem, and W. Keith
Rodman, of Springfield.

*Windsor Calkins,* of Eugene, argued the cause for respondent. With him on the brief was Richard R. Morris, of Portland.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE, WARNER and TOOZE, Justices.

LATOURETTE, J.

The question presented by this appeal is whether or not Lane county may assess for taxation some 10 million feet of logs in the possession of plaintiff, Edward Hines Lumber Co., at its mill in Westfir, Lane county, said logs having been cut from timber sold by the United States government to said company under a conditional sales contract, title to the same being reserved in the government until the logs were scaled and paid for. We find the bone of contention set out in the following language in appellant's brief:

"The basic contentions of the Company in all of its appeals may be summarized as follows: (1) Title to the logs and all property interest therein on January 1, 1948, were reserved in the United States Government and taxation by Lane County violates the federal Constitution which impliedly provides that property of the United States is immune from taxation by a county; (2) The statute of the State of Oregon, section 110-201(1), O.C.L.A., as amended by Oregon Laws 1949, chapter 395, section 2 exempts the logs from taxation as property of the United States."

The trial court held that the logs were not taxable; the county appeals.

On the 5th day of August, 1946, a contract was entered into between the federal government and the plaintiff company for the purchase and sale of certain government timber located in Lane county, the salient

features being as follows: (1) that the company would make a down payment of 15 cents per thousand feet for the total cut of timber sold under the agreement; (2) that payments of stumpage should be made in advance and that no timber should be cut until paid for; (3) that an additional sum of not less than $15,000 nor more than $25,000 should be paid as stumpage was cut; (4) that timber should be scaled by the government at the mill deck immediately prior to the cutting operations at the mill; (5) that title to the timber should remain in the government until it had been scaled and paid for; and (6) that the company should dispose of slashings, prevent soil erosion, take fire precautions and do other incidental things to conserve natural resources.

It appears that the scaling by the government of the logs in question had not been made on January 1, 1948, although the government had moneys on hand more than sufficient to pay for the logs on which the tax assessment was attempted to be made.

The record shows that included on the assessment roll of the county assessor was a notation, "lumber and logs assessed subject to prior rights of the Federal Government."

The Oregon laws applicable to the question posed follow:

Section 110-101, OCLA: "All real property within this state and all tangible personal property situated within this state, except as otherwise provided by law, shall be subject to assessment and taxation in equal and ratable proportion. * * *"

Section 110-312, OCLA, as amended: "Except as otherwise specifically provided, all personal property shall be assessed for taxation each year at its situs as of the day and hour of assessment prescribed by law; * * * Personal property may

be assessed in the name of the owner or of any person having possession or control thereof. * * *''

Section 110-103, OCLA: "The term 'tangible personal property' means and includes all chattels and movables, such as boats and vessels, merchandise and stock in trade, furniture and personal effects, goods, livestock, vehicles, farming equipment and all machinery and equipment used in the manufacture of raw or partially manufactured products; also all improvements made by persons on lands claimed by them under the laws of the United States, the fee of which lands still is vested in the United States. * * *''

Section 110-201, OCLA, as amended: "The following property shall be exempt from taxation: (1) All property, real and personal, of the United States, its agencies or instrumentalities, except where taxation of any such property by this state is authorized or permitted by the United States."

■ From the foregoing, it is clear that the logs in question, title to which at the time of the assessment was in the federal government, would be immune from state or county taxation, unless taxation of such property was authorized or permitted by the United States. No federal statute has been suggested authorizing the taxation of the logs in question, and we must look to the decisions of the courts to determine if immunity is waived.

In the case of *Meredith v. State Tax Commission,* 163 Or 305, 96 P2d 1082, 125 ALR 1417, speaking through Mr. Justice BAILEY, this court, in a case involving the taxation of an employe of the United States, held that the decisions of the Supreme Court are controlling and have the force and effect of law.

In the case of *S. R. A. v. Minnesota,* 327 US 558, 90 L ed 851, 860, 66 S Ct 749, the Supreme Court of the United States had before it the question of whether

or not the state of Minnesota could tax realty, legal title to which was in the United States, but which had been sold to a buyer under an executory contract of sale, the possession of the same being in the buyer and the instalment payments on the purchase price of the property having not been fully made. It was stated in the assessment roll that the tax was on the realty "subject to fee title remaining in the United States of America." The court upheld the tax and said:

"We think the public policy of national development and federal tax collection justify the limitation on state taxing power announced by the foregoing decisions. We do not, however, conclude that their rationale leads to an exemption from state taxation of all lands in which the United States holds legal title as security for the purchase price. To say that the payment of the purchase price is a necessary condition precedent to the loss of federal immunity is to make the rule too mechanical. It should be sufficiently flexible to subject real private rights, disentangled from federal policies, to state taxation. This has been the holding in mining claims. Where a beneficial interest has passed to a vendee, the retention of legal title does not give a significant difference from the situation of a deed with a lien retained or a mortgage back to secure the purchase money.

"That was the interpretation given the facts in New Brunswick v. United States, 276 US 547, 72 L ed 693, 48 S Ct 371. The City of New Brunswick under the authority of New Jersey sought to tax lots in the possession of purchasers from the Housing Corporation, a corporation wholly owned by the United States and therefore treated as the United States. These purchasers had paid enough of the purchase price—ten per cent—to entitle them to deeds under their contracts but had not paid the entire purchase price. The deeds had not been delivered nor the mortgages executed for the

balance as required by the purchase agreement. This Court said: 'In equity the situation was then the same as if the Corporation had conveyed title to the purchasers, as owners, and they had mortgaged the lots to the Corporation to secure the unpaid purchase money.' * * * The Court sustained the tax subject to the paramount lien of the United States. We think the petitioner's Minnesota property is in a similar position. Ownership of the beneficial interest has passed to the petitioner with legal title retained by the United States for security purposes. This should not put this private property in an exempt class.

"There is a suggestion that to hold United States property subject to state taxation pending the completion of payment will injuriously affect its salability and therefore interfere with the Government's handling of its affairs. Our recent cases have disposed of this economic argument in a way which is contrary to petitioner's contention. * * *

"The only other contention of petitioner which we need mention is that the state has included the interest of the United States in the valuation of the land, and has therefore subjected that interest to taxation. But no deduction need be made for the interest of the Government since that interest is for security purposes only and is not beneficial in nature. The whole equitable ownership is in the petitioner and the value of that ownership may be ascertained on the basis of the full value of the land. * * *"

See *Ken Realty Co. v. State,* 247 Ala 610, 25 So2d 675; *Bancroft Inv. Corporation v. City of Jacksonville,* 157 Fla 546, 27 So2d 162.

The rule in Oregon relating to the relative rights of the seller and purchaser under an executory contract of sale of realty is in harmony with that of the government's as outlined in the foregoing S. R. A. decision.

A leading case on this point is *Flanagan v. Great Cent. Land Co.*, 45 Or 335, 342, 77 P 485. See also *Grider v. Turnbow*, 162 Or 622, 641, 94 P2d 285.

It is argued by the company that the case of *Nehalem Timber Co. v. Columbia Co.*, 97 Or 100, 111, 189 P 212, 190 P 318, sustains the company's position that the logs in question were not taxable. That case involved growing timber purchased from the government by the Nehalem Timber Co. under an executory contract. The timber remained on the land and only a part of the purchase price had been paid. Columbia county sought to tax the land on which the timber stood. We held that the Nehalem Timber Co.'s interest in the timber was not taxable under the government's immunity theory, but said, "* * * We must remember, however, that since it has not a taxable estate in the realty the plaintiff is not obligated to the county for any tax upon it, whatever its liability may be when the timber becomes personalty by severence from the land."

The company urges that the Nehalem case is authority for the proposition that indefinite equities cannot be taxed, and that the legal estate alone is a subject of taxation. Solace for the company may be had, perhaps, from some of the language used in the Nehalem case, but we must remember that that case dealt with property, title to which was in the United States government, and at which time, under the laws of this state, federal government property was exempt from taxation. General Laws of Oregon, 1907, ch. 268, overlooked by counsel, again exempted the taxation of property of the United States and of state-held property, "excepting land belonging to this state held under a contract for the purchase thereof.", so that it is quite obvious that the state did permit the taxa-

tion of equities on all land, excepting that held by the United States government.

Since the decision in the Nehalem Timber Co. case, the legislature, by ch. 202, Oregon Laws, 1947, legalizes taxation of real property of the United States, which is held under a contract of sale, at its full value without regard to whether the whole or any part of the purchase price on such property remains unpaid so long as the interest of the United States in such real property is not impaired. It therefore follows that the legislature, by the above enactment, nullifies the Nehalem case as authority that equitable interests in United States real property cannot be taxed.

It is next argued that the case of *S. R. A. v. Minnesota,* supra, is not authority in the instant case since the court there clearly pointed out that the United States had no living interest in the property, whereas in the case at bar the contract between the parties imposed obligations on the company which were inserted in the contract for the purpose of effectuating the policy of the United States in conserving natural resources and promoting community development, which provisions included the disposal of slashings, prevention of soil erosion, fire precautions, etc.

The answer to the above contention is that the tax in question is directed solely against the interest of the company in the whole value of the logs, the rights of the government being unaffected. The assessment roll itself clearly states that the logs are assessed "subject to the prior rights of the Federal Government.", just as were the lands assessed in the S. R. A. case "subject to the prior rights of the Federal Government."

■ Government immunity from state taxation is premised on the proposition that an added burden

would be imposed upon the government if state taxation were permitted. By § 110-839, OCLA, taxes levied on personal property become a debt due and owing from the owner of such personal property, and by ch. 389, Oregon Laws, 1941, such personal property taxes may become a lien on the real property so that the tax on the logs in question could be collected from the company without in any wise interfering with the government's rights in the premises.

It is next asserted that Oregon laws disregard interests less the legal title for the collection of ad valorem taxes on personal property. The authorities cited in this connection have to do with real property and do not sustain the company's contention.

Counsel neglects to notice § 110-103, OCLA, which, in part, follows:

"The term 'tangible personal property' means and includes all chattels and movables, * * * ; also all improvements made by persons on lands claimed by them under the laws of the United States, the fee of which lands still is vested in the United States."

Under the provisions of the above statute, all improvements, such as buildings, etc., erected by persons on government lands, purchased under an executory contract of sale, the fee of which remains in the government, are taxable as personal property. It is obvious that some improvements might be so affixed to the land that they would become a part of the realty insofar as the vendor and vendee are concerned, in which event the purchaser would have only an equitable interest in the improvements.

Since, pursuant to § 110-312, OCLA, the assessment is against the property and may be assessed either "in the name of the owner or of any person having

possession or control thereof", the logs in question, being in the possession and control of the company at the time of the assessment, there being no immunity in favor of the federal government, were legally assessed. See *Municipal Acceptance Corporation v. Canole,* 342 Mo 1170, 119 SW2d 820; *San Diego County v. Davis,* 1 Cal2d 145, 33 P2d 827.

The judgment of the lower court is reversed. Costs and disbursements awarded to appellant.